UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
ELIYA, INC.,                                    :
:
                            Plaintiff,          :
:                    06 Civ 195 (GEL)
            -against-                           :
:                    **OPINION AND ORDER**
KOHL'S DEPARTMENT STORES,                       :
:
                            Defendant.          :
:
----------------------------------------------------------------x

Tedd S. Levine, Baldinger & Levine, LLC, Mineola,
New York, for Plaintiff.

Albert Robin, Cowan, Liebowitz & Latman, P.C.,
New York, New York, and W. Mack Webner and
Leigh Ann Lindquist, Sugrue Mion, PLLC,
Washington, D.C., for Defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Eliya, Inc. ("Eliya"), a designer and manufacturer of shoes, brings this action

against defendant Kohl's Department Stores ("Kohl's"), a well-known retailer, alleging that

Kohl's copied one of Eliya's shoe designs and is currently selling the copied shoe at its retail

stores in violation of various common law and statutory prohibitions.  Kohl's now moves to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), and for attorney's fees pursuant to 28

U.S.C. § 1927.  For the reasons below, Kohl's motion will be granted in part and denied in part.

**BACKGROUND**

      For purposes of this motion to dismiss, the Court assumes as true the facts asserted in

plaintiff's Amended Complaint.  In 2004, Eliya created an original shoe design, consisting of

patterned stitching on the front and sides of the shoe, a strap with visible stitching, and a sole with a pattern of spots that wraps around the shoe and extends up the back, sides, and front. (Am. Compl. ¶ 8.)  Eliya gave this design the creative title SHOE, and copyrighted the design drawing with the United States Copyright Office.  (Am. Compl. Ex. A.)  Based on the SHOE design, Eliya fashioned a line of shoes that it has been promoting and selling since on or about August 15, 2004, under brand label BERNE MEV.

In October 2005, Eliya became aware that Kohl's was manufacturing and selling a line of shoes using a design that is substantially similar to the SHOE design.  On October 21, 2005, Eliya sent Kohl's a letter demanding that it immediately cease and desist from selling the similarly-designed Kohl's shoe.  Kohl's refused this demand, and Eliya commenced the instant action.  Eliya asserts seven causes of action against Kohl's – false designation and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; common law unfair competition; dilution under N.Y. Gen. Bus. Law § 360-*l*; deceptive business practices under N.Y. Gen. Bus. Law § 349; copyright infringement under 17 U.S.C. § 501; and common law copyright infringement.

**DISCUSSION**

I.  <u>Motion to Dismiss Standard of Review</u>

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint," <u>Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.</u>, 32 F.3d 697, 699-700 (2d Cir. 1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," <u>Thomas v. City of New York</u>, 143 F.3d 31, 36 (2d Cir. 1998) (citations omitted).  The

question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claim."  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.

1996) (internal quotation marks and citations omitted).  All reasonable inferences are to be

drawn in the plaintiff's favor, which often makes it "difficult to resolve [the claims] as a matter

of law."  In re Independent Energy Holdings PLC, 154 F. Supp. 2d 741, 747 (S.D.N.Y. 2001).

As noted above, Eliya asserts seven causes of action against Kohl's.  Each cause of

action will be addressed in turn.

II.  Count One:  False Designation of Origin and Unfair Competition

Eliya asserts that Kohl's manufacture and sale of a shoe similar to that of SHOE violates

the Lanham Act, 15 U.S.C. § 1125(a).  Section 1125(a) prohibits the unauthorized use of "any

word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause

confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of [the

unauthorized user's] goods, services, or commercial activities by another person."  While the

text of the statute prohibits only the use of a "word, term, name, symbol, or device, or any

combination thereof," § 1125(a)'s proscriptions apply with equal force to the trade dress of a

product, which is defined as the product's "total image . . .  includ[ing] features such as size,

shape, color or color combinations, texture, or graphics."  Tough Traveler, Ltd. v. Outbound

Prods., 60 F.3d 964, 967 (2d Cir. 1995), quoting LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71,

75 (2d Cir. 1985) (alterations in original); see also Restatement (Third) of Unfair Competition §

16 cmt. a ("The term 'trade dress' is often used to describe the overall appearance or image of

goods . . . as offered for sale in the marketplace.").

Trade dress itself is divided into two categories – product design trade dress and product packaging trade dress.  As the names suggest, product design trade dress refers to the design of the product itself, while product packaging trade dress refers to a product's packaging as it appears in the marketplace.  While the line between packaging and design may be difficult to draw in some cases,[1] the distinction is generally clear.

To state a claim for false designation under § 1125(a) based on trade dress, a plaintiff must establish (1) that its trade dress "is distinctive as to the source of the good," (2) "that there is a likelihood of confusion between [the plaintiff's] good and the defendant's," and (3) that the trade dress is not functional.  Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-16 (2d Cir. 2001).  In a claim based on product packaging trade dress, the distinctiveness requirement can be met in one of two ways – either by establishing that the dress is inherently distinctive because it clearly identifies the source of the product, or by establishing that the dress has acquired secondary meaning because, in the mind of the general public, the "primary significance" of the dress is to identify the source of the product.  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 215 (2000).  However, when a plaintiff's claim is based on product design trade dress, distinctiveness can only be established by a showing of secondary meaning.  Id.  In other words, the overall design of a product is protected under the Lanham Act only if the general public associates the product's design with a particular source of origin.

---

[1] For example, the Supreme Court has suggested that a Coca-Cola bottle may be packaging "for those consumers who drink the Coke and then discard the bottle," but may be product design "for those consumers who are bottle collectors," or may be "part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former."  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 215 (2000).

The third requirement – that the trade dress not be functional – serves to protect competition by refusing to grant trademark protection to essential or merely aesthetic features of a product.  Yurman, 262 F.3d at 116.  A product feature is functional, and is therefore not protected as trade dress under § 1125(a), if the feature is "essential to the use or purpose of the article," if "it affects the cost or quality of the article," id., or if its primary purpose is aesthetic, Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1008-09 (2d Cir. 1995).  The requirement that a protectable feature or design be nonfunctional overlaps with and supports the requirements relating to source identification and consumer confusion.  If a feature or design only serves to make a product "more useful" or "more appealing," then it does not serve to identify the source of the product, and it is not protected trade dress under the Lanham Act.  Yurman, 262 F.3d at 115 (noting the oft-cited example of a cocktail shaker shaped like a penguin where the penguin design did not identify the source of the shaker but merely made the shaker more appealing and was therefore not protectable).

Eliya sufficiently alleges a claim of trade dress infringement under the Lanham Act.  The trade dress described by Eliya is the SHOE design itself.  Accordingly, Eliya must allege (1) that the SHOE design has acquired secondary meaning in the general public, (2) that there is a likelihood of confusion between Eliya's shoes based on the SHOE design and the shoes sold by Kohl's, and (3) that the SHOE design features that comprise its trade dress are not functional.

With respect to the first element, Eliya alleges that the trade dress of the SHOE design includes:

> a rectangular label attached to the inner portion towards the back of the shoe, an imbedded rectangular label on the sole of the shoe, two elongated stitched patterns of like size on the top front portion of the shoe, two elongated stitched patterns of like size on the sides

> of the shoe, a strap which incorporates visible stitching, curved-
> shaped stitching on the front portion of the shoe, a border that
> [w]raps around and extends up the back, the sides, and front of the
> shoe, and a spotted design of circles all through the border,
> extending up the back, the sides, the front, and the sole of the shoe.

(Am Compl. ¶ 10.)  Additionally, Eliya alleges that the SHOE design has "acquired

distinctiveness through secondary meaning such that consumers are likely to associate the source

of such products with Plaintiff" (id.), that the trade dress "has acquired enormous value and

recognition in the United States," and that it is "well known to the consuming public . . . as

identifying and distinguishing Plaintiff as the exclusive and unique source of the products that

are used in connection with such trade dress" (Am. Compl. ¶ 11).

    With respect to the second element, likelihood of confusion, Eliya alleges that

"consumers are likely to associate the source of [products with the SHOE design] with Plaintiff"

(Am. Compl. ¶ 10), that "Kohl's use of [the] features on its products is likely to cause confusion

in the marketplace as to the source of such goods" (id.), and that "Kohl's is using the . . . trade

dress of Plaintiff's SHOE product line such that there is a likelihood of confusion between the

trade dress of the Kohl's shoes and the trade dress of Plaintiff's SHOE product line" (Am.

Compl. ¶ 13).[2]

---

[2] To determine whether, as a factual matter, there exists a likelihood of confusion, the
Court must use the test set out in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.
1961).  However, an application of the so-called Polaroid factors on this motion to dismiss
would be inappropriate because it would involve premature factfinding.  See Hearts on Fire Co.,
LLC v. L C Int'l Corp., No. 04 Civ. 2536, 2004 WL 1724932, at *4 (S.D.N.Y. July 30, 2004).
There is no requirement that a plaintiff address the Polaroid factors in its pleading; such a
requirement would be inconsistent with the "notice pleading" philosophy of the Federal Rules of
Civil Procedure.  Cf. Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002).

With respect to the third element, functionality, Eliya asserts that the design features that make up the described trade dress are "non-functional."  (Am. Compl. ¶ 10.)

These allegations are sufficient to support a claim under § 1125(a).  Eliya describes the SHOE design and alleges that the design serves as a source identifier to the general public.  Eliya alleges that Kohl's has copied its SHOE design, and that Kohl's imitation causes consumer confusion regarding the source of Kohl's products.  Lastly, Eliya alleges that the design elements it describes are not functional.  Accordingly, Eliya has successfully asserted a trade dress claim under § 1125(a).

Kohl's arguments to the contrary do not compel a different conclusion.  First, Kohl's argues that the features of the SHOE design that Eliya alleges to be its trade dress are functional. Second, Kohl's argues that Eliya's shoes based on the SHOE design have not been on the market long enough to acquire secondary meaning.  Third, Kohl's argues that Eliya has not sufficiently pleaded the specific elements of the SHOE design that comprise its trade dress.  For the reasons below, each of these arguments is without merit.

Whether the trade dress described by Eliya is functional for purposes of the Lanham Act is essentially a fact question.  Kohl's asserts that "[s]ome of the features . . . are clearly functional (strap, stitching, sole) and Eliya alleges no facts to offset the prima facie functionality of the claimed features."  (Def. Mem. 19.)  This argument fails for two reasons.  First, Eliya does not claim that any one particular feature of the SHOE design is protectable trade dress.  Rather, Eliya lists a number of features that, taken together, comprise the overall image of the SHOE design.  It is this overall image that allegedly comprises Eliya's trade dress.  Kohl's claim that the strap is functional as a separate feature does not as a matter of law defeat Eliya's assertion

that the overall SHOE design, which incorporates not just the strap but also the sole, the

stitching, and the labels, is non-functional, and therefore protectable as trade dress for purposes

of the Lanham Act.  Second, Kohl's is simply incorrect that the strap, stitching, or sole are

functional features under the Lanham Act.  Indeed, every shoe needs some form of stitching and

some form of sole, and many shoes have some form of strap.  However, Eliya does not assert

that its trade dress is the mere fact that the SHOE design incorporates a strap, stitching, or a sole.

Rather, Eliya asserts that the particular *design* of the stitching, the sole, and the strap on its

SHOE design comprise the design's overall image and are protectable as trade dress.

Accordingly, Eliya sufficiently alleges that the overall image of the SHOE design serves to

identify the source of Eliya's shoes fashioned after the SHOE design.

 Kohl's argument that the SHOE design has not been on the market for a sufficient

amount of time to acquire secondary meaning is similarly without merit.  In support of this

argument, Kohl's relies on 15 U.S.C. § 1052(f), which states that exclusive use of a trademark

for five years provides prima facie evidence that the mark is distinctive for purposes of

registration.  However, nothing in the statute suggests that a trademark or trade dress may not

become distinctive for purposes of the Lanham Act in less than five years.  To the contrary, to

provide that five years creates a rebuttable presumption of distinctiveness implies that

distinctiveness can be proved, instead of presumed, before that time.  Indeed, due to the "mass

exposure achievable with today's communications media," public demand for a particular

product and concomitant secondary meaning can be "rapidly achieved."  L.A. Gear, Inc. v.

Thom McAn Shoe Co., 988 F.2d 1117, 1130 (Fed. Cir. 1993).  If a product with a particular

trade dress becomes popular in a short period of time, the trade dress may become distinctive

through secondary meaning in a matter of months.  See id. (finding that popular shoe design had acquired secondary meaning in five months).  Here, Eliya alleges that its products based on the SHOE design are well known and that the public identifies the design as being affiliated exclusively with Eliya.  Whether this is so is to be determined later in this litigation, but Elitya has sufficiently alleged that its trade dress is distinctive.

Lastly, Eliya has pleaded the specific elements of its trade dress with sufficient particularity.  Kohl's argues, based on Landscape Forms, Inc. v. Columbia Cascade Co., that Eliya has not "articulat[ed] . . . the specific elements which comprise its distinct dress," 113 F.3d 373, 381 (2d Cir. 1997), and that therefore Kohl's is "left with only speculation as to what Eliya claims Kohl's has infringed" (Def. Mem. 20).  In fact, however, Eliya clearly articulates the specific features of the SHOE design that comprise its trade dress – the stitching patterns on the front and side of the shoe and the strap, the design of the strap itself, the labels, and the pattern on the wrap-around sole.  (Am. Compl. ¶ 10.)  Kohl's does not explain how Eliya's description could be more detailed or what additional information Kohl's would need to avoid "speculation." The Federal Rules require only notice pleading, and Eliya's description of its trade dress is sufficient to provide Kohl's with sufficient notice regarding the features of the SHOE design that Eliya alleges Kohl's has infringed.

III.  Count Two: Common Law Trademark Infringement

Eliya's second cause of action is entitled "Common Law Trademark Infringement." (Am. Compl. p. 6.)  Kohl's correctly observes that Eliya does not assert the existence of any trademark.  Rather, Eliya's claims are based on its trade dress.  Accordingly, Kohl's argues that

Eliya has failed to state a claim because it does not identify a particular trademark upon which Kohl's has infringed.  (Def. Mem. 17.)  This argument proves too much.

As Kohl's concedes in its reply papers, Eliya's claim of common law trademark infringement is based on the allegation that "it is harmed by the copying of the shoe design . . . (its trade dress which it now claims is also its trademark)."  (Def. Reply. 8.)  Kohl's own statement illustrates that Kohl's comprehends the substance of Eliya's claim.  As Kohl's itself understands, Eliya's use of the term "trademark" refers to its trade dress, the same trade dress at issue in Count One of the Amended Complaint.  This (perhaps sloppy) use of language is understandable, given courts' well-established practice of including trade dress in the Lanham Act's definition of trademark.  See Yurman, 262 F.3d at 114.  Therefore, Eliya's use of the word "trademark" to refer to its trade dress will not result in the dismissal of the second cause of action of the complaint.

Kohl's next argues that Eliya's claim of common law trademark infringement is preempted by federal copyright law.  Kohl's asserts, confusingly, that a shoe could be protected by copyright if it were not a useful article, but that in this case Eliya's shoes are not protected by copyright, and so since the second cause of action would not support a copyright claim, it is preempted by federal copyright law.  (Def. Mem. 17.)  Apparently, Kohl's argues that failure to state a copyright claim results in the preemption of any non-copyright state law claims.  Not surprisingly, no support is provided for this proposition.  This lack of support is not surprising because contrary to Kohl's argument, federal copyright law does not preempt claims of common law trade dress infringement.  See, e.g., U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 174 (S.D.N.Y. 2001).

-10-

Finally, with respect to the sufficiency of Eliya's allegations, under New York law a common law claim of trade dress infringement is evaluated "in the same manner as a trade dress claim under the Lanham Act." U-Neek, 147 F. Supp. 2d at 178. Accordingly, because Eliya has stated a claim for relief under the Lanham Act, it has stated a claim for relief under New York common law.

IV.  Count Three: Common Law Unfair Competition

Kohl's conclusorily asserts in its Notice of Motion that Eliya's third cause of action for common law unfair competition is preempted by federal copyright law. However, Kohl's does not support this contention or address Eliya's common law unfair competition claim in its initial moving papers. Despite Kohl's failure to support its assertion of preemption, Eliya addresses the issue in its responsive briefing, and Kohl's belatedly supports its claim of preemption in its reply. Accordingly, because both parties have addressed the issue, the Court will evaluate Kohl's argument to dismiss Eliya's third cause of action despite Kohl's initial abandonment.

Kohl's argues that Eliya's unfair competition claim is preempted by federal copyright law because Eliya's allegation of unfair competition is based on the mere copying of the SHOE design. However, a state law cause of action is not preempted by federal copyright law if the state law cause of action requires an extra element "instead of or in addition to the acts of reproduction, performance, distribution or display" of copyrighted material. Samara Bros., Inc. v. Wal-Mart Stores, Inc., 165 F.3d 120, 130 (2d Cir.), rev'd on other grounds, 529 U.S. 205 (2000). A claim of unfair competition under the New York common law is "almost indistinguishable" from a claim under the Lanham Act, which Eliya asserts in Count One. Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998). As discussed above, both

claims require a showing of a likelihood of confusion, an element in addition to reproduction, performance, distribution, or display.  Accordingly, Eliya's common law unfair competition claim is not preempted.

V.  Count Four: N.Y. Gen. Bus. Law § 360-*l*

    To state a claim under § 360-*l* a plaintiff must show (1) that its product has distinctive trade dress, and (2) that the defendant's appropriation of that trade dress results in a likelihood of dilution.  See New York Stock Exch., Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002); see also Landscape Forms, 113 F.3d at 369 (stating that § 360-*l* applies with equal force to trademarks and trade dress).  For trade dress to be distinctive, it must "possess a distinctive quality capable of dilution."  Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1030 (2d Cir. 1989).  Such distinctiveness may be achieved through secondary meaning, such that the mark "has become so associated in the mind of the public with that entity . . . or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others."  Id., quoting Allied Maintenance Corp. v. Allied Mech. Trades, Inc., 42 N.Y.2d 538, 545 (1977).  However, a trademark's distinctiveness "in a limited geographical or commercial area does not endow it with a secondary meaning for the public generally." Mead, 875 F.2d at 1030.

    Eliya has alleged facts sufficient to state a claim under § 360-*l*.  As discussed above, Eliya alleges that its trade dress "has acquired enormous value and recognition in the United States" (Am. Compl. ¶ 10), and that it is "well known to the consuming public . . . as identifying and distinguishing Plaintiff as the exclusive and unique source of the products that are used in connection with such trade dress" (Am. Compl. ¶ 11).  These assertions are sufficient to allege

the nationwide distinctiveness required under § 360-*l*.  Cf. SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, No. 06 Civ. 1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) (dismissing plaintiff's claim under § 360-*l* because asserted distinctiveness of trademark was limited to plaintiff's customers in the New York metro area).  Additionally, Eliya has alleged that Kohl's use of its trade dress is likely to cause "injury to [its] public image and reputation" and dilute "the distinctive quality of its trade dress."  (Am. Compl. ¶ 30.)  Accordingly, Eliya has stated a claim under § 360-*l*.

Kohl's essentially concedes that this cause of action is well pleaded.  Instead, Kohl's once again argues that the cause of action is preempted by federal copyright law, again providing no authority for this contention.  Indeed, the argument Kohl's advances against Eliya's dilution claim rivals the incomprehensibility of its preemption argument with respect to Eliya's common law trademark claim.  Here, Kohl's argues that "the dilution statute of New York is preempted in this case because the alleged trade dress is either capable of or not capable of Copyright protection."  (Def. Mem. 17.)  Kohl's is correct to the extent that any item necessarily falls into one of two categories – those that are capable of copyright protection and those that are not.  However, this unremarkable fact does nothing to support Kohl's claim that New York's statutory cause of action for trade dress dilution is preempted by federal copyright law.

As discussed above, a cause of action is not preempted by copyright law if the state law cause of action requires an extra element "instead of or in addition to the acts of reproduction, performance, distribution or display."  Samara Bros., 165 F.3d at 130.  With respect to a claim under § 360-*l*, a plaintiff must establish a likelihood of dilution, an element which is not essential to a federal copyright claim.  Accordingly, Eliya's fourth cause of action is not preempted.

-13-

VI.  <u>Count Five: N.Y. Gen. Bus. Law § 349</u>

To state a claim under § 349 a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521 (2d Cir. 2000).

However, § 349 "is, at its core, a consumer protection device," <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F.3d 256, 264 (2d Cir. 1995), not a tool to resolve disputes between competitors. Therefore, for the statute to apply, a plaintiff must establish a "direct harm to consumers" that is greater than the "general consumer confusion" commonly found in trademark actions.  <u>See</u> <u>Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.</u>, No. 96 Civ. 5150, 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997).  The "gravamen" of the claim must be an alleged injury to consumers or the general public.  <u>See</u> <u>Schnabolk</u>, 65 F.3d at 264.  Courts in this district have explained that the sort of harm necessary to establish consumer injury includes harms such as "potential danger to the public health or safety." <u>Gucci Am., Inc. v. Duty Free Apparel, Ltd.</u>, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (collecting cases).

Eliya fails to allege sufficient public injury to state a claim under § 349.  Rather, Eliya alleges that the consumer injury that underpins this cause of action is the confusion, mistake, and deception that exists in any case of alleged trade dress infringement.  (Pl. Mem. 20; <u>see also</u> Am. Comp. ¶¶ 18, 36, 37.)  Where the only alleged harm is that which is generally associated with violations of intellectual property law, courts in this district have found that plaintiffs cannot state a claim under § 349.  <u>See, e.g.,</u> <u>SMJ Group</u>, 2006 WL 2516519, at *5; <u>U-Neek</u>, 147 F. Supp. 2d at 176.  Accordingly, Eliya's fifth cause of action will be dismissed.

-14-

VII.  <u>Count Six: Copyright Infringement</u>

To state a claim of copyright infringement a plaintiff must establish (1) the ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work.  <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.</u>, 338 F.3d 127, 131 (2d Cir. 2003). Unauthorized copying can be established by showing either a substantial similarity between the copyrighted work and the defendant's work or by showing that the defendant's copying was "improper" or "unlawful."  <u>Id</u>.

In this action Eliya contends, and Kohl's concedes for purposes of this motion, that Eliya has a valid copyright in a work entitled SHOE.  The certificate of registration for SHOE is attached as an exhibit to the Amended Complaint, and it contains a two dimensional rendition of the SHOE design from a side view.  Many of the elements Eliya asserts as the SHOE design's trade dress are visible in the drawing, including the strap and the spotted design around the border of the shoe at the sole.  (Am. Compl. Ex. A.)  Also attached to the complaint are an image of a pair of Eliya's shoes based on the SHOE design (Am. Compl. Ex. B) and an image of a pair of Kohl's allegedly similar shoes (Am. Compl. Ex. C).  Eliya alleges that by creating and selling the shoes illustrated in Exhibit C to the Amended Complaint, Kohl's has copied its copyrighted SHOE design.

Strictly speaking, however, Kohl's has not copied Eliya's copyrighted work.  Eliya has a copyright in the SHOE design, which is a two-dimensional representation of the side view of a shoe.  Eliya does not allege that Kohl's has copied this two-dimensional picture; rather, Eliya

alleges that Kohl's has created a functional three-dimensional shoe.  However, Eliya has no copyright in an actual shoe, only a two-dimensional representation of one.[3]

This conclusion is compelled by the certificate of registration for SHOE provided by Eliya.  After indicating that the title of the work is SHOE, the certificate states that the nature of the work is an "Etching."  Elsewhere on the certificate, the author is asked to check a box to describe the nature of the work.  The choices provided are three-dimensional sculpture, two-dimensional artwork, reproduction of a work of art, map, photograph, jewelry design, technical drawing, text, or architectural work.  Eliya checked the box for two-dimensional artwork for SHOE.  Accordingly, Eliya's copyright is for a two-dimensional etching.

However, the fact that Eliya copyrighted a two-dimensional etching while Kohl's created a three-dimensional shoe does not necessarily doom Eliya's infringement claim.  A two-dimensional design can be infringed if it is reproduced as part of a three-dimensional object, such as an item of apparel.  For example, in Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), the plaintiff copyrighted designs for two sweaters – one with a "puffy leaf" pattern, and the other depicting a squirrel and leaves.  71 F.3d at 999.  The Court of Appeals held that the defendant had infringed the plaintiff's copyrighted designs by reproducing the leaves and squirrels on its own line of sweaters.  Id. at 1000-05.  Relying on this holding, Eliya argues that because Kohl's allegedly copied aspects of the SHOE design and incorporated them into its own line of shoes, Kohl's has essentially taken Eliya's two-dimensional work and copied it onto a three-dimensional item.  (Pl. Mem. 23.)

_____

[3] This distinction brings to mind Magritte's famous painting of a pipe: Kohl's contends that what Eliya submitted to the copyright office *n'est pas une chaussure*, but is merely a depiction of one.

Eliya stretches the holding of <u>Knitwaves</u> too far.  Copyright law does not allow a third party to reproduce a work of visual art on a sweater and then defend its actions by claiming that the artist only has a copyright on the visual art itself, not on a sweater.  <u>Knitwaves</u> illustrates this common sense conclusion.  However, that is not what happened here.  Eliya does not allege that Kohl's reproduced the etching of the SHOE design on the surface of an infringing line of shoes.  Rather, Eliya alleges that Kohl's created an actual three-dimensional shoe that is similar to the one depicted in the SHOE etching.  This was not the situation faced by the Court of Appeals in <u>Knitwaves</u>, which prevented the defendant from reproducing the plaintiff's squirrels and leaves on the surface of its sweaters.  The Court did not prevent the defendant from creating an actual squirrel or an actual leaf that resembled those depicted in the plaintiff's designs.

However, the difficulty in extending Eliya's copyright in the SHOE etching to cover Kohl's creation of a functional shoe has less to do with an increase in dimension than it does with copyright law's refusal to protect useful articles.  Any work that has "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information" – such as a shoe – is not granted the protection of copyright.  <u>Chosun Int'l, Inc. v. Chrisha Creations, Ltd.</u>, 413 F.3d 324, 327 (2d Cir. 2005), <u>quoting</u> 17 U.S.C. § 101.  This limitation is based on the well-accepted "notion that functional items are not eligible for the relatively long-term protections of copyright."  <u>Id</u>. at 328.  Accordingly, an etching of a shoe, which has no utilitarian function and is simply an artistic rendering of a physical object, can be copyrighted, while an actual shoe cannot be.  As a necessary consequence, ownership of a copyright in a pictorial representation of a useful article does not vest the owner of the picture with a derivative copyright in the useful article itself.  If such roundabout copyrighting were permitted, copyright

-17-

law's exclusion of useful articles would be eviscerated, because any useful article could be

copyrighted by merely obtaining a copyright for a two-dimensional representation of the article.

Eliya recognizes this fact, both in its memorandum in opposition to Kohl's motion (see

Pl. Mem. 23) and in its registration of SHOE as a copyrightable etching instead of as an

noncopyrightable shoe.  However, Eliya argues that while it does not have a copyright in SHOE

as a shoe, it does have a copyright in specific individual design elements incorporated into the

SHOE design, and that Kohl's infringed its copyright by copying those design elements.  (Pl.

Mem. 23.)  Specifically, Eliya alleges that its copyright in SHOE includes the following

"separate design elements" –

> two elongated stitched-patters of like size on the top front portion
> of the SHOE design, two elongated stitched-patterns of like size on
> the sides of the SHOE design, a strap with visible stitching,
> curved-shaped stitching on the front portion of the SHOE design, a
> border that [w]raps around and extends up the back, the sides and
> front of the SHOE design, a spotted design of circles all through
> the border and extending up the back, sides and front of the SHOE
> design, and a spotted design of circles all through the sole of the
> SHOE design.

(Am. Compl. ¶ 8) – and that Kohl's copied these specific design elements when it created its

own line of shoes (Am. Compl. ¶ 9).

Eliya is correct that "while 'useful articles,' taken *as a whole*, are not eligible for

copyright protection, the individual design elements comprising these items may, viewed

*separately*, meet the Copyright Act's requirements."  Chosun, 413 F.3d at 328.  The classic

example of this rule is provided by Mazer v. Stein, in which the Supreme Court held that the

artistic design on the base of a lamp could be copyrighted because the design was separable from

the lamp's useful function.  347 U.S. 201 (1954).  The lamp's ability to illuminate a room would

-18-

not be affected by the removal of the design on the base, and therefore the design was copyrightable.  Here, Eliya contends that the copyrighted etching of the SHOE design contains certain separable design elements, and that Kohl's has infringed upon Eliya's copyright in SHOE by incorporating those design elements into its similar line of shoes.

The line between protectable separable design elements and unprotectable inseparable functional elements is not always clear.  See Brandir Int'l, Inc. v. Cascade Pacific Lumber Co., 834 F.2d 1142, 1143 (2d Cir. 1987) ("the line Congress attempted to draw between copyrightable art and noncopyrightable design" is not clear); Kieselstein-Cord v. Accessories By Pearl, Inc., 632 F.2d 989, 992-93 (2d Cir. 1980) ("[N]one of the authorities – the Mazer opinion, the old regulations, or the statute – offer any ready answer to the line-drawing problem." (internal quotation marks omitted)); see also Chosun, 413 F.3d at 327 (noting that District Court stated that "our circuit's tests for physical and conceptual separability were too inconsistent to afford meaningful guidance").  However, the Court of Appeals has attempted to provide guidance in determining whether a particular design element of a useful article is separable, and therefore copyrightable.

Separability comes in two flavors – physical separability and conceptual separability. See Chosun, 413 F.3d at 328 ("if a useful article incorporates a design element that is phyiscally or conceptually separable from the underlying product, the element is eligible for copyright protection").  A feature of a useful article is physically separable if, like an artistic base of a lamp, the feature could actually be physically separated from the useful article and be "capable of existing independently as a work of art."  Norris Industries, Inc. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983).  "[W]hen a component of a useful article can actually be

removed from the original item and separately sold, without adversely impacting the article's functionality, that physically separable design element may be copyrighted." <u>Chosun</u>, 413 F.3d at 329.

Our Court of Appeals recognizes a second form of separability – conceptual separability. <u>But see</u> <u>OddzOn Prods., Inc. v. Oman</u>, 591 F.2d 346, 350 (D.C. Cir. 1991) (refusing to "enter the 'conceptual separability' fray").  Unlike physical separability, the doctrine of conceptual separability is somewhat amorphous.  In attempting to fashion a workable test for determining the line between conceptually separable and inseparable features, the Court of Appeals admitted that "'there is no line, but merely a spectrum of forms and shapes responsive in varying degrees to utilitarian concerns.'" <u>Brandir</u>, 834 F.2d at 1145, <u>quoting</u> Robert C. Denicola, <u>Applied Art and Industrial Design: A Suggested Approach to Copyright in Useful Articles</u>, 67 Minn. L. Rev. 707, 741 (1983).  Despite recognizing this lack of clarity, the Court of Appeals went on to adopt the following test for conceptual separability, which it asserted would "not be too difficult to administer in practice." <u>Brandir</u>, 834 F.2d at 1145.

> [I]f design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements.  Conversely, where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists.

<u>Id</u>.  Accordingly, while a belt buckle is a useful article, an artistic design on a belt buckle is conceptually separable if the design "reflect[s] purely aesthetic choices, independent of the buckle['s] function." <u>Id</u>.; <u>see also</u> <u>Kieselstein</u>, 632 F.2d 989.  However, the design of a bike rack is not conceptually separable if "the form of the rack is influenced in significant measure by utilitarian concerns." <u>Brandir</u>, 834 F.2d at 1147.

-20-

The design elements described by Eliya are neither physically nor conceptually separable.  First, none of the elements described by Eliya could be physically separated from an actual pair of shoes without affecting the shoes' functionality.  Removing the strap, stitching, or sole of a shoe would, to some degree, adversely impact a wearer's ability to locomote by foot, either because the shoe would fall off (without a strap), fall apart (without stitching), or provide no protection against the ground (without a sole).  Nor could any of the design elements, once removed, be separately sold or exist as an independent work of art.  Even assuming that some portion of the stitching or the border on the SHOE design could be removed from an actual shoe without affecting the shoe's functionality, removed stitching is simply a length of thread, and a removed border is merely a formless band of spotted rubber.  Neither feature is a separate work of copyrightable art.

Nor are the design features conceptually separable.  Unlike a fanciful design on the base of a lamp, or the ornamentation on a belt buckle, the features of the SHOE design described by Eliya are not purely aesthetic.  Of course, the precise design of the sole, the strap, the border, or the stitching is, to some extent, influenced by artistic considerations.  People do not simply wear shoes to protect their feet while walking.  Rather, people often wear shoes, at least in part, as an expression of fashion or of their personal taste.  With this consideration in mind, the SHOE design clearly reflects various aesthetic decisions that were made to create a desirable, attractive, and marketable shoe.

However, the mere act of aesthetic decisionmaking does not render the result of that decisionmaking conceptually separable.  Rather, for a design element to be conceptually separable, it must be the result of aesthetic decisionmaking that is *independent* of functional

considerations.  The design elements of SHOE described in the complaint are not sufficiently independent of a shoe's functional purpose to satisfy this standard.  Stitching, straps, borders, and soles all serve a functional purpose on a shoe, and "functional components of useful articles, no matter how artistically designed, have generally been denied copyright protection unless they are physically separable from the useful article."  Norris Indus., 696 F.2d at 924.

For example, in SCOA Indus., Inc. v. Famolare, Inc., the plaintiffs sought copyright protection for two design elements of a shoe – troughs in the sole of the shoe and wavy lines on the side.  192 U.S.P.Q. 216, 218 (S.D.N.Y. 1976).  The District Court held that these features were not copyrightable, reasoning that they "have no existence as works of art" and that "[a] shoe sole is an object whose intrinsic function is utilitarian."  Id.  Accordingly, the SCOA Indus. Court concluded that "the troughs, waves, and lines which appear on the shoe sole . . . do not exist independently as works of art."  Id.

This Court agrees.  The design features of SHOE do not represent independent artistic expression, as would an image displayed on the shoe's surface, see Knitwaves, 71 F.3d at 1000-05 (image on sweater), or a jewelry-like appendage attached to the strap, see Kieselstein, 632 F.2d 989 (design on belt buckle).  Rather, the features reflect the designer's decisions regarding how best to implement a shoe's functional purposes – how to, in an aesthetically pleasing manner, keep the shoe attached to the wearer's feet, hold the material of the shoe together, cushion the wearer's feet, and provide traction on various surfaces.  Some of these decisions may reflect more concern for form than for function.  However, the blending of form and function in the SHOE design results in the exclusion of its design elements from copyright protection.

-22-

It should be noted that this conclusion is not contrary to the Court's conclusion above that, with respect to Eliya's trade dress claims, the features asserted to comprise Eliya's trade dress were not functional.  Functionality is defined differently under the law of copyright and the law of trade dress.  With respect to copyright, a blending of function and appearance lands a feature on the functional side of the line, rendering it inseparable and ineligible for copyright protection.  However, with respect to trade dress, a useful feature can also be a source identifier, and a feature is functional only if it is "essential" to the design of a product.  See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1002 (2d Cir. 1997) (concluding that a "useful" box design was not functional because "two alternative" designs could have served a similar function).  Accordingly, a feature might not be functional under the Lanham Act even though it serves some functional purpose.

VIII.  Count Seven: Common Law Copyright Infringement

Eliya's claim of common law copyright infringement must be dismissed because it is preempted by federal copyright law.  See Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989) (stating that the Copyright Act's "express objective" is to create a "national, uniform copyright law by broadly pre-empting state statutory and common-law copyright regulation"); see also 17 U.S.C. § 301(a) (stating that all rights in "the general scope of copyright . . . are governed exclusively by" the Copyright Act).

Eliya argues that despite the preemptive power of federal copyright law, its common law cause of action should survive because it is "pleaded in the alternative."  (Pl. Mem. 24.) However, pleading a claim in the alternative does not resuscitate an otherwise unviable claim. Regardless of whether Eliya's statutory copyright claim has merit, its common law copyright

claim asserts rights in "the general scope of copyright" and therefore, win or lose, those rights are "governed exclusively by" the Copyright Act. 17 U.S.C. § 301(a). Accordingly, Eliya's common law copyright claim will be dismissed.

IX.  Kohl's Request for Attorneys' Fees

Under 28 U.S.C. § 1927, attorneys' fees are awarded only upon a showing that a party acted in bad faith and that the party's claims are completely without merit. Jones v. Hirschfeld, 348 F. Supp. 2d 50, 62 (S.D.N.Y. 2004). Here, Kohl's asserts that the claims brought by Eliya are "clearly not available" and can only be attributed to "vexatiousness." (Def. Mem. 22.) However, more than half of Eliya's claims have survived this motion to dismiss. Additionally, aside from the conclusory assertion that Eliya's claims are meritless, Kohl's presents no evidence that Eliya or its attorneys have acted in bad faith. Accordingly, the request for attorney's fees is denied.

## CONCLUSION

Kohl's motion to dismiss is granted with respect to Count Five, Count Six, and Count Seven of the Amended Complaint. The motion is denied with respect to Count One, Count Two, Count Three, and Count Four. Kohl's request for attorneys' fees is denied. The Clerk of the Court is respectfully directed to close the motion (Doc. ## 5, 13) for all statistical purposes.


SO ORDERED.

Dated: New York, New York
       September 13, 2006

_____
GERARD E. LYNCH
United States District Judge

-24-